IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GODDARD SYSTEMS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-1003-CJB |
| | ) |
| HINA GONDAL, BILAL GONDAL, and | ) |
| BHSG & CO. | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| ROBERT STELLA and | ) |
| THE GEM SCHOOL, INC. | ) |
| | ) |
| Intervenors. | ) |
| | ) |

## MEMORANDUM ORDER

Presently before the Court in this case is Plaintiff Goddard Systems, Inc.'s ("Plaintiff" or "GSI") motion to dismiss Defendants Hina Gondal, Bilal Gondal, and BHSG & Co.'s ("Defendants") counterclaim for breach of the implied covenant of good faith and fair dealing (the "covenant of good faith and fair dealing" or the "covenant of good faith"), pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "motion"). (D.I. 19) Defendants oppose the motion. (D.I. 38) For the reasons set forth below, the Court GRANTS Plaintiff's motion.

I. BACKGROUND

A. Factual Background

GSI is a Pennsylvania corporation with its principal place of business in King of Prussia, Pennsylvania. (D.I. 1 at 1 at ¶ 1) Mrs. Hina Gondal and Mr. Bilal Gondal (collectively, "the Gondals") are residents of Middletown, Delaware. (*Id.* at 1–2 at ¶¶ 2–3) BHSG & Co.

("BHSG") is a Delaware corporation with its principal place of business in Middletown, Delaware. (*Id.* at 2 at ¶ 4) BHSG was formed by and was controlled by the Gondals; Mrs. Gondal now owns 100% of the shares of BHSG. (*Id.*; D.I. 15 at 12 at ¶ 4)

From 2007 through 2017, the Gondals operated a THE GODDARD SCHOOL® ("Goddard School") preschool franchise in Middletown, Delaware (the "Middletown Goddard School"). (D.I. 1 at ¶¶ 33, 68) The rights and responsibilities relating to the Gondals' relationship with Plaintiff were documented in a franchise agreement (the "FA" or "Franchise Agreement"), which was executed by Mr. Gondal and GSI on July 11, 2007. (D.I. 1-1, ex. 1 at 1; D.I. 1 at 8 at ¶ 33) In December 2010, by way of an addendum to the FA, Mrs. Gondal "was added to the Franchise Agreement as a franchisee[.]" (D.I. 1 at 8 at ¶ 34; *see also* D.I. 1-1, ex. 2) In July 2013, the Gondals assigned their rights and obligations under the Franchise Agreement to BHSG, (D.I. 1 at 8 at ¶ 35; D.I. 1-1, ex. 3), but agreed to guarantee BHSG's performance "of its obligations under the Franchise Agreement and to continue to be bound by all of the provisions of the Franchise Agreement." (D.I. 1-1, ex. 3 at 1)

On October 10, 2016, Plaintiff notified Defendants that it was terminating the FA as the result of Defendants' failure "to comply with GSI's Quality Assurance ('QA') standards, as required under [the] Franchise Agreement." (D.I. 1-2, ex. 7 at 1) The Gondals thereafter signed a "Listing Agreement" with GSI on October 28, 2016, in which they offered to sell the assets of the Middletown Goddard School and the associated franchise for $850,000. (*Id.*, ex. 8)

On November 16, 2016, the parties executed a Conditional Reinstatement of the Franchise Agreement (the "Conditional FA"). (*Id.*, ex. 9; *see also* D.I. 1 at ¶ 58) Defendants allege that "[i]n order to induce [them] to sign the Conditional [FA], GSI led Defendants to

2

believe that the Franchise Agreement would be reinstated if they cured the alleged quality assurance deficiencies, which [Defendants] did." (D.I. 15 at 14 at ¶ 11)

The Conditional FA documented the history of the Middletown Goddard School franchise, Defendants' prior QA failures, and GSI's termination of the FA. (D.I. 1-2, ex. 9 at ¶¶ A–O) Under the Conditional FA, the FA was reinstated from November 16, 2016 through February 28, 2017 (the "Reinstatement Period"), (*id.* at ¶ 1), during which time Defendants would seek to "transfer their Goddard School business to an unrelated third party approved by GSI[,]" (*id.*). According to the Conditional FA, the parties' "sole purpose" in entering into the agreement was to allow Defendants to "transfer their business to [such a] third party[.]" (*Id.* at 4)

In the case that Defendants "fail[ed] to complete the transfer of the business within the Reinstatement Period . . . , then on notice from GSI [Defendants would] agree to cooperate fully with GSI to effect an orderly closure of the School." (*Id.* at ¶ 3) The Conditional FA gave Plaintiff the ability to extend the Reinstatement Period "on a showing that [Defendants were] working diligently and reasonably toward a sale of the business to an approved buyer." (*Id.* at ¶ 1) At the same time, the Conditional FA also granted Plaintiff the power to "terminate the Franchise Agreement immediately and without any notice or opportunity to cure if [Defendants] fail[ed] to comply in any respect with any of their obligations under" the FA or the Conditional FA. (*Id.* at ¶ 6) Notices under the Conditional FA were to "be in writing[.]" (*Id.* at ¶ 8)

There are two other notable aspects of the Conditional FA. First, Defendants therein "acknowledge[d] and agree[d] that they have no right to, or expectation in, any reinstatement of the Franchise Agreement after the Franchise Agreement has been terminated[.]" (*Id.* at ¶ 9) Second, Defendants "release[d], acquit[ted] and forever discharge[d] [Plaintiff] . . . from all

3

obligations, claims, counterclaims, debts, demands, liabilities, costs, attorneys' fees, actions, or causes of action . . . . based in whole or part on events occurring prior to the Effective Date of [the] Conditional [FA, which is November 16, 2016]" (hereinafter, "the release"). (*Id.* at ¶ 14)

The Reinstatement Period terminated on February 28, 2017; during that time period, Defendants did not transfer the school to a third party. (D.I. 1 at 16-17 at ¶ 60) Thereafter, through March and April 2017, Plaintiff did not seek to close the school, and Defendants continued to operate the school as a Goddard School (including by paying royalties to Plaintiff). (*Id.* at ¶¶ 60, 62)

Defendants allege that at some point in this time frame, "Plaintiff's consultant offered to purchase Defendants' franchise for approximately $120,000, which was a grossly unfair price." (D.I. 15 at 14 at ¶ 18) "When Defendants refused this offer, the consultant advised Defendants that they would likely receive less from GSI." (*Id.*) On March 27, 2017, "GSI issued Defendants a 'Certificate of Compliance[,]'" (*id.* at 14 at ¶ 12), which Defendants contend "cured the alleged [QA] deficiencies[,]" (*id.* at 14 at ¶ 11). "Despite GSI's [prior] assurances and despite GSI issuing the Certificate of Compliance to Defendants confirming that any default had now been cured – GSI [] refused to reinstate the franchise, effectively forcing Defendants to close the school." (*Id.* at 14 at ¶ 15)

In early April 2017, Plaintiff provided Defendants with a proposed Second Conditional Reinstatement of the FA and asked Defendants to sign it. (D.I. 1 at 17 at ¶ 61) Defendants did not sign this document, and on April 28, 2017, Defendants' counsel sent Plaintiff a letter, notifying it that "the school is being shut down effective April 28, 2017." (D.I. 1-2, ex. 10 at 1)

B.   **Procedural Background**

4

Plaintiff filed a Complaint against Defendants in the United States District Court for the Eastern District of Pennsylvania on May 5, 2017. (D.I. 1) The Complaint alleged various causes of action for, *inter alia*, breach of contract, trademark infringement, and trade secret misappropriation—all arising out of the circumstances leading to the termination of the FA and the closure of the Middletown Goddard School.[1] (D.I. 1) The case was subsequently transferred to the United States District Court for the District of Delaware on July 24, 2017, (D.I. 26), and was assigned to the Court thereafter.[2]

On May 31, 2017, Defendants filed an Answer and Counterclaim; the Counterclaim asserts a single cause of action for "Breach of the Covenant of Good Faith and Fair Dealing / Breach of Contract[.]" (D.I. 15 at 12–15 ¶¶ 1–20) In the Counterclaim, Defendants allege that: (1) in order to get them to sign the Conditional FA, Plaintiff told them that so long as they cured the aforementioned outstanding QA deficiencies, then Plaintiff would reinstate the FA thereafter; but that (2) once Defendants cured the QA deficiencies, Plaintiff refused to reinstate the FA, which in turn forced Defendants to close the school. (*Id.* at 14 at ¶¶ 11–16) Defendants contend that Plaintiff "[d]espite [its] assurances" otherwise, never had any intention to reinstate Defendants' franchise; instead Plaintiff's "true motivation" was to "acquire Defendants' school at a deeply discounted and grossly unfair price." (*Id.* at 14 ¶¶ 15–18) Ultimately, Defendants

---

[1] On May 22, 2017, Plaintiff moved for a preliminary injunction against Defendants and various non-parties. (D.I. 8) The Court will address this motion separately.

[2] On September 20, 2017, the parties filed a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, in which they consented to the Court conducting all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 48) The District Court ordered that this consent was effective as of September 21, 2017. (D.I. 49)

5

assert that Plaintiff breached the covenant of good faith and fair dealing by "terminat[ing] and then refus[ing] to reinstate [] Defendants' Goddard school franchise without adequate justification, i.e., non-existent and/or minor quality assurance deficiencies, all of which were cured to GSI's satisfaction." (*Id.* at 12 at ¶ 4)

On June 21, 2017, Plaintiff filed the instant motion, in which it asserts that the Counterclaim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 19) Briefing on the motion was completed as of September 1, 2017. (D.I. 39)

## II. STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

6

the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

To the extent that a Rule 12(b)(6) motion is used to assert an affirmative defense, dismissal on such a ground is permitted only if the well-pleaded factual allegations and other materials of record, construed in the light most favorable to the non-movant, suffice to establish the defense. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Kabbaj v. Google, Inc.*, Civ. No. 13-1522-RGA, 2014 WL 1369864, at *2 n.2 (D. Del. Apr. 7, 2014).[3]

Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint. *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, Civil Action No. 12-1461-LPS-CJB, 2017 WL 239326, at *3 (D. Del. Jan. 19, 2017); *Idenix Pharms., Inc. v. Gilead Scis., Inc.*, Civil Action No. 13-1987-LPS, 2014 WL 4222902, at *5 (D. Del. Aug. 25, 2014). Thus, the standards set forth above apply to a review of Defendants' Counterclaim here.

### III. DISCUSSION

---

[3] In addressing the instant motion, the Court has above and will below reference the FA, (D.I. 1-1, ex. 1), and portions of the Conditional FA, (D.I. 1-2, ex. 9), as well as the contents of certain other documents that are attached to Plaintiff's Complaint. In resolving a Rule 12(b)(6) motion, courts may consider documents that form the basis for the claim at issue, such as documents that are integral to or explicitly relied upon by the pleading in question. *Santiago v. MacNamara*, Civil Action No. 14-795-RGA, 2015 WL 4036200, at *1 n.1 (D. Del. July 1, 2015). And in ruling on a counterclaim, it is also permissible for courts to consider allegations in a plaintiff's complaint that a defendant admitted in its answer and counterclaim. *Morozin v. Johnson*, No. Civ.A. 11-2653, 2011 WL 5837146, at *1 n.2 (E.D. Pa. Nov. 18, 2011) (citation omitted)). Each of the documents attached to Plaintiff's Complaint and referred to herein were either relied upon by Defendants in asserting their Counterclaim, (D.I. 15 at 13 at ¶ 10), or were admitted by Defendants to be authentic documents and that have some bearing on the Counterclaim, (*see id.* at 4–7 at ¶¶ 33–35, 37, 54, 56-58, 68, 74).

As was noted above, the Counterclaim's title ("Breach of the Covenant of Good Faith and Fair Dealing / Breach of Contract") could be read to suggest that in it, Defendants are asserting a breach of contract claim and/or a breach of the covenant of good faith and fair dealing. (D.I. 15 at 12) Plaintiff's motion addresses both such possibilities, and the Court's decision below will do the same.

### A. Breach of Contract

Plaintiff notes that a breach of contract claim must, *inter alia*, allege the breach of a provision of a contract; yet here, it argues that the Counterclaim "make[s] various allegations about a wrongful termination, [but that] those allegations are not tied to any *actual provisions of* the [Conditional FA.]" (D.I. 19 at 10 (emphasis added)) Thus, Plaintiff asserts that, to the extent the Counterclaim is premised on a breach of contract theory, it should be dismissed. (*Id.*)

Defendants, in response, admit that they "have not alleged a breach of any express provision contained in the Conditional [FA.]" (D.I. 38 at 5) And, relatedly, Defendants do not appear to oppose Plaintiff's request for dismissal in this regard.

In light of this, to the extent that it could be said that Defendants' Counterclaim asserts a cause of action for breach of contract, Plaintiff's motion is GRANTED.

### B. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff also asserts that any portion of the Counterclaim premised on a breach of the covenant of good faith and fair dealing should be dismissed. After setting out the relevant

Pennsylvania law[4] regarding this type of claim, the Court will thereafter address the substance of Plaintiff's argument.

### 1. Legal Standard

According to the Pennsylvania Supreme Court, "a party to a franchise agreement has an obligation to conduct itself with good faith and in a commercially reasonable manner." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009) (citing *Atl. Richfield Co. v. Razumic*, 390 A.2d 736, 742 (Pa. 1978)). "The covenant of good faith . . . 'involve[s] an *implied* duty to bring about a condition or to exercise discretion in a reasonable way.'" *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993) (emphasis in original) (citation omitted) (assessing Pennsylvania law). Pennsylvania courts define the "duty of 'good faith' . . . as '[h]onesty in fact in the conduct or transaction concerned.'" *Creeger Brick & Bldg. Supply, Inc. v. Mid–State Bank and Tr. Co.*, 560 A.2d 151, 153 (Pa. Super. Ct. 1989) (alteration in original) (citation omitted).

"[I]mplied covenants and [] express terms of a contract are necessarily mutually exclusive—one can invoke 'implied' terms only when there are no express terms in the contract relating to the particular issue." *USX Corp.*, 988 F.2d at 438; *see also Reading Terminal Merchs. Ass'n by Asteris v. Samuel Rappaport Assocs.*, 456 A.2d 552, 557 (Pa. Super. Ct. 1983). And the covenant of good faith "cannot be used to override an express contractual term." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000) (citations omitted) (assessing Pennsylvania law).

---

[4] The parties agree that Pennsylvania law applies. (D.I. 1-1, ex. 1 at 16 at § 23(A); D.I. 15 at 13 at ¶ 5, D.I. 19 at 10)

"When determining whether a given action violates the implied covenant of good faith, [a] court[] must ask whether the parties would have mutually prohibited the action if they had considered it at the time of the contract." *Bicycle Corp. of Am. v. Meridian Bank*, No. CIV. A. 95-6438, 1995 WL 695090, at *4 (E.D. Pa. Nov. 21, 1995) (assessing Pennsylvania law). Pennsylvania courts usually refuse to find that a party violated the implied covenant of good faith when the party bringing such a claim also has another cause of action arising from the same facts. *Id.* (citing cases).

### 2. Discussion

Plaintiff contends that Defendants' Counterclaim should be dismissed for several reasons. The Court need only address the first of Plaintiff's arguments here.

That first argument relates to the release found in the Conditional FA, which, according to Plaintiff, bars Defendants' Counterclaim. (D.I. 19 at 8-9) The release states that Defendants release Plaintiff "from all . . . counterclaims . . . based in whole or part on events occurring prior to the Effective Date of the Conditional [FA]"—November 16, 2016. (D.I. 1-2, ex. 9 at ¶ 14; *see also id.* at 1 (defining the "Effective Date" of the Conditional FA)) Under Pennsylvania law, releases like these are valid absent a showing of fraud, duress or mutual mistake. *Davis ex rel. Davis v. Government Emps. Ins. Co.*, 775 A.2d 871, 875 (Pa. Super. Ct. 2001); *Vacation Charters Holmes v. Lankenau Hosp.*, 627 A.2d 763, 767 (Pa. Super. Ct. 1993).

Defendants Counterclaim, as written, *is* a claim clearly based in "part on events occurring prior to" November 16, 2016. In fact, the entire thrust of the Counterclaim is that "[i]n order to induce Defendants to sign the Conditional [FA], GSI lead Defendants to believe that the [FA] would be reinstated if [Defendants] cured the alleged quality assurance deficiencies, which

10

[Defendants] did." (D.I. 15 at 14 at ¶ 11) Defendants then allege in the Counterclaim that "[d]espite [these] assurances" and despite the fact that they cured any QA defaults, "GSI arbitrarily refused to reinstate the franchise" in bad faith. (*Id.* at ¶¶ 15-16) Whatever "assurances" Plaintiff's employees made to Defendants in order to get Defendants to sign the Conditional FA obviously had to have occurred before November 16, 2016—the date the Conditional FA was signed.

Defendants only argument as to why the release is not dispositive of their Counterclaim was that "the events giving rise to [their c]ounterclaim occurred *after*" November 16, 2016 since "Plaintiff's bad faith in terminating Defendants' Goddard franchise . . . occurred in 2017[.]" (D.I. 38 at 6 (emphasis in original)) But as discussed above, any assertion that all of the events giving rise to this Counterclaim occurred after the signing of the Conditional FA is just not credible, in light of the factual allegations made in the Counterclaim.

If there is another reason why the release in question would not serve as a complete defense to the Counterclaim, Defendants did not assert it in their briefing. Thus, for the reasons set forth above, Defendants' Counterclaim should also be dismissed to the extent it asserts a breach of the covenant of good faith and fair dealing. Plaintiff's Motion is GRANTED in this regard as well.

IV. **CONCLUSION**

For the reasons set forth above, Plaintiff's motion is GRANTED.

Dated: March 27, 2018

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

11