# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GODDARD SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1003-CJB |
| | ) | |
| HINA GONDAL, BILAL GONDAL, | ) | |
| BHSG & CO., YELLOW GRASS | ) | |
| INVESTMENTS, LLC, ROBERT | ) | |
| STELLA, FCS LENDING, LLC, BLUE | ) | |
| GRASS INVESTMENTS, LLC, and | ) | |
| THE GEM SCHOOL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

At Wilmington this **14th day of June, 2019**.

**WHEREAS**, the Court has considered Defendants Robert Stella, FCS Lending, LLC ("FCS"), Bluegrass Investments, LLC ("Bluegrass") and The Gem School, Inc.'s ("The Gem School") (collectively, the "Stella Defendants") "Motion to Compel Third-Party Deposition *Ad Testificandum* of Cassandra Zimmerman," filed pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure (the "Motion"), (D.I. 171), and the parties' related submissions, (D.I. 174; D.I. 175; D.I. 176; D.I. 177);

**NOW, THEREFORE, IT IS HEREBY ORDERED** as follows:

1. On May 3, 2017, Plaintiff Goddard Systems, Inc. ("Goddard") filed a Complaint in this case against Defendants Hina Gondal, Bilal Gondal, and BHSG & CO. (the "Gondal Defendants") in the United States District Court for the Eastern District of Pennsylvania. (D.I. 1) The case was transferred to this Court on July 24, 2017, (D.I. 26), and the parties subsequently consented to the Court's jurisdiction to conduct all proceedings in the case, (D.I. 48; D.I. 49).

The action relates to a Franchise Agreement ("Franchise Agreement") previously entered into between Goddard and, *inter alia*, Mr. and Mrs. Gondal (the "Gondals"), which granted the Gondals a preschool franchise in Middletown, Delaware (the "Middletown Goddard School"). (D.I. 61 at 1-2) In its Complaint, Goddard alleged a breach of various terms in the Franchise Agreement by the Gondal Defendants. (D.I. 93) On September 1, 2017, The Gem School and Robert Stella moved to intervene in the proceeding, (D.I. 40), and the Court granted that unopposed motion on September 8, 2017. The Gem School is owned by Mr. Stella and is now run out of the former location of the Middletown Goddard School. (D.I. 61 at 3)

2. On August 3, 2018, Goddard filed an Amended Complaint against the Gondal Defendants, Defendant Yellow Grass Investments, LLC ("Yellow Grass") and the Stella Defendants. (D.I. 93) Now, for the first time in the case, the Stella Defendants were named defendants; in that pleading, Goddard made claims against the Stella Defendants, including a claim of civil conspiracy. (*Id.* at ¶¶ 182-88) To that end, Goddard alleges, *inter alia*, that the Stella Defendants participated in a scheme with Gondal Defendants and Yellow Grass "to breach, violate and otherwise frustrate and circumvent" the Franchise Agreement. (*Id.* at ¶ 85)

3. Relevant to those allegations is a January 2016 agreement between Bluegrass (a company controlled by Mr. Stella) and Yellow Grass (a company controlled by Mrs. Gondal), in which Yellow Grass was to pay $2,250,000 to buy the premises on which the Middletown Goddard School was located, as well as the school building itself (the "Premises"). (*Id.* at ¶¶ 7, 11, 62; *see also* D.I. 61 at 6-7) Yellow Grass needed financing to afford the purchase, and so it worked with third-party Bank of America, N.A. ("BoA"); BoA ultimately made a purchase money loan to Yellow Grass (the "BoA loan") in the amount of $2,081,000. (D.I. 93 at ¶ 63) Goddard claims that Yellow Grass and the Gondals could not afford to pay the money required

2

of the buyer under the BoA loan, nor could they afford the balance of the purchase price on the Premises. (*Id.* at ¶ 64) As a result, Yellow Grass and the Gondals allegedly "asked or otherwise arranged" for Mr. Stella (through either Bluegrass or FCS, another entity controlled by Mr. Stella), to provide Yellow Grass with a loan of $425,000 (the "Stella Loan"). (*Id.*) Goddard asserts that the purpose of the Stella Loan was in part so that Yellow Grass could: (1) represent to BoA that it had the "required purchase money credit" of $175,000 needed to buy the Premises; and (2) pay the necessary deposit of $25,000 due under the BoA loan. (*Id.*) Goddard further alleges that the Gondals "created false and otherwise misleading deposit statements" in order to convince BoA to provide the BoA Loan. (*Id.*) The Stella Loan was allegedly not disclosed to the BoA underwriters working on the BoA loan; according to Goddard, if the Stella Loan had been disclosed, that would have materially altered BoA's decision to provide Yellow Grass with the BoA loan. (*Id.* at ¶¶ 64-65) These allegations, in turn, are asserted by Goddard to be relevant to its claims against the Stella Defendants in this case, including, presumably, Goddard's claim of civil conspiracy. (*Id.* at ¶¶ 182-88)

4. Cassandra Zimmerman ("Zimmerman") is a Vice President, Senior Relationship Manager, for BoA, and she works with franchisees who are seeking lending from BoA. (D.I. 171 at ¶ 1) In 2015 and 2016, Zimmerman handled the BoA loan transaction described above. (D.I. 174 at ¶¶ 10-11) On August 31, 2017, Goddard took Zimmerman's deposition in this case for five hours. (*Id.* at ¶ 12) At this time, the Stella Defendants had not yet intervened in the case and were not parties to the case. (D.I. 176 at ¶ 2)

5. More recently, on November 12, 2018, Stella Defendants' counsel issued a subpoena noticing a second deposition for Zimmerman, to be held on December 10, 2018. (D.I.

3

171 at ¶ 2)[1] After BoA's counsel opposed this request, (*id.* at ¶ 7), on January 29, 2019, the Stella Defendants filed the instant Motion, by which they seek permission to take a second deposition of Zimmerman, (*id.* at ¶¶ 6-7). Briefing on the Motion was completed on February 14, 2019. (D.I. 177)

      6.     The Stella Defendants explain that they seek to "depose Zimmerman because the BoA loan transaction is a major focal point of Goddard's Amended Complaint, and in particular, with respect to the broad allegations pertaining to [the] Stella Defendants." (D.I. 171 at ¶ 4) They assert that in their review of documents produced by Goddard (after Goddard deposed Zimmerman for the first time), the Stella Defendants found "inconsistencies and other areas of inquiry" that they "intend to investigate" at a second Zimmerman deposition. (*Id.* at ¶ 9) BoA opposes the Motion. (D.I. 174)

      7.     Generally, a party does not need to obtain leave of court to take a deposition. Fed. R. Civ. P. 30(a)(1). However, pursuant to Rule 30(a)(2), a party "must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)[,]" if the parties have not stipulated to the deposition and if the deponent has already been deposed in the case. Fed. R. Civ. P. 30(a)(2)(A)(ii). As is noted in Rule 30(a)(2)'s text, in considering whether to grant a party's request that a witness be deposed for a second time in a case, the Court should consider whether that request is consistent with the dictates of Rule 26(b)(2). *See York Grp., Inc. v. Pontone*, No. 2:10-CV-1078-JFC, 2012 WL 12895532, at *1 (W.D. Pa. Sept. 27, 2012). Rule 26(b)(2), in turn, requires the Court to limit discovery if it has been determined that, *inter alia,*: "(i) the discovery sought is unreasonably cumulative or duplicative . . . ; (ii) the party seeking

---

[1] The subpoena also sought documents from Zimmerman, though the document request is not at issue here. (D.I. 171 at ¶ 2 & n.2)

4

discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C); *cf. Melhorn v. N.J. Transit Rail Operations, Inc.*, 203 F.R.D. 176, 180 (E.D. Pa. 2001) (noting that absent a showing of "need or good reason for doing so," a deponent should not be required to appear for a second deposition).

8. Regarding the first factor referenced in Rule 26(b)(2), which asks (in relevant part here) whether discovery sought is "unreasonably cumulative or duplicative," the Court agrees with Stella Defendants that the deposition at issue would not fall into those categories. After all, since Zimmerman's first deposition, new claims have been made in the case against the Stella Defendants, which relate in significant part to: (1) the nature of the Gondal Defendants' financial relationship to Mr. Stella generally; and (2) the BoA loan transaction specifically. (D.I. 93 at ¶¶ 62-68; D.I. 176 at ¶¶ 3-4) Although Zimmerman may have been "thorough[ly] and extensive[ly]" deposed by Goddard back in 2017, (D.I. 174 at ¶ 19), the questions she was asked were not posed by the Stella Defendants' counsel (and could not have been, as the Stella Defendants had not yet intervened in the case). Nor could those questions have been directly focused on the claims that Goddard now brings against the Stella Defendants (or any related defenses), since those claims were not asserted until long after the deposition was over. *See York Grp., Inc.*, 2012 WL 12895532, at *2 ("The consistent holding in . . . cases [where a party seeks to take a second deposition of a witness where new claims, evidence or counterclaims have been brought in the meantime] is that the second deposition will be permitted, but the areas of inquiry will be strictly limited to the newly filed claims or newly disclosed information."). As the Stella Defendants' questions of Zimmerman will be focused on those new claims and defenses, as well as on new, related documents that have come to light in the case since the first deposition, (D.I.

176 at ¶ 12), nothing about that kind of questioning could be said to be "*unreasonably cumulative or duplicative*" for purposes of Rule 26(b)(2). This factor thus favors a second deposition.

9. Regarding the second factor—whether the Stella Defendants had "ample opportunity to obtain the information by discovery in the action"—the Court agrees with the Stella Defendants that they did not. Although BoA argues that Stella Defendants had "ample opportunity to review the detailed deposition transcript from Ms. Zimmerman's first deposition" and to "obtain information from other parties" about the BoA loan, (D.I. 174 at ¶ 19), that is of little matter here. The Stella Defendants have not yet had the chance to *ask their own questions* of Zimmerman. And Zimmerman is a key player in the loan transaction, such that were the Stella Defendants restricted to only asking *others* about the loan, they would be walled off from hearing firsthand about an important part of the overall story. *See Christy v. Pennsylvania Turnpike Comm'n*, 160 F.R.D. 51, 53 (E.D. Pa. 1995) (denying the plaintiff's motion for a protective order from a second deposition because, *inter alia*, the newly-added defendants may be prejudiced by being prevented from taking a second deposition). This factor too favors a second deposition.

10. Finally, with respect to the third factor—whether a second deposition would be within the scope of Rule 26(b)(1) (i.e., that it would be relevant to a party's claims or defenses, and proportional to the needs of the case)—the sought-after discovery is within the scope of the Rule. If the BoA loan transaction is significant enough to Goddard's claim of civil conspiracy such that it is described and referenced in many paragraphs of the pleading, (D.I. 93 at ¶¶ 63-68), and if Zimmerman is the BoA employee who worked on that loan transaction, than surely

questions to her about the loan are relevant to the case.[2] Moreover, the Stella Defendants have agreed to conduct the second deposition in accordance with Zimmerman's availability and at a location convenient to her. (D.I. 171 at ¶ 6) This factor too then favors taking the deposition.

11. All three factors thus weigh in favor of permitting Zimmerman's second deposition. Accordingly, the Stella Defendants have met their burden to demonstrate that the deposition should go forward and their Motion is GRANTED.[3] The Stella Defendants may question Zimmerman about subject matter relating to: (1) the claims raised against the Stella Defendants in the Amended Complaint (including the BoA loan transaction); (2) any relevant defenses of the Stella Defendants; and (3) any other new claims or new documents that were not

---

[2] By way of explanation as to the type of material they seek to ask Zimmerman about, the Stella Defendants make reference to a December 3, 2015 e-mail that Zimmerman wrote to Mr. Gondal and others. (D.I. 176 at ¶¶ 6-13) In the e-mail, Zimmerman states that the Premises had been appraised at $3,095,000. (D.I. 174 at ¶ 14 & ex. B) However, in a later December 18, 2015 e-mail that is a part of that same e-mail chain, Mrs. Gondal writes to Zimmerman and makes reference to a "new appraised value" for the Premises. (*Id.*, ex. B) At the BoA loan closing, the parties used an appraisal of the Premises that stated that the Premises was valued at $2,250,000. (D.I. 174 at ¶ 14) BoA now claims that the $3,095,000 appraisal referenced in Zimmerman's December 3, 2015 e-mail was "in error" and that this appraisal "does not exist and was never used" in the BoA loan transaction. (*Id.* at ¶ 15) While the Stella Defendants do not do a great job of explaining the exact nature of the "ramifications" that they think the December 3, 2015 e-mail (and its reference to a higher appraisal figure) will have on this case, (D.I. 176 at ¶ 11), in general, the Court can see how questions about the property at issue in the BoA loan transaction and about possible irregularities in that transaction would be relevant to this case.

[3] With regard to Goddard's opposition to the Motion, (D.I. 175), the Court finds that its objections are moot. In a responsive filing on February 12, 2019, Goddard argued that a second deposition of Zimmerman could be deemed a violation of the automatic stays that had been triggered by Mrs. Gondal's and BHSG & CO.'s recent bankruptcies, "unless and until the Bankruptcy Court grants relief from the automatic stays." (*Id.* at 1-2) However, on April 23, 2019, the stay of this case was modified in accordance with Orders entered by the United States Bankruptcy Court for the District of Delaware, which had the impact of "allow[ing] GSI to litigate its claims for the enforcement of the Franchise Agreement and related franchise documents . . . through injunctive and other non-economic relief[.]" (D.I. 183 & ex. A) In light of this, the Court does not understand Goddard to still be pressing this objection to a second deposition of Zimmerman.

known or at issue at the time of the first deposition. *See York Grp., Inc.*, 2012 WL 12895532, at *3; *Square D Co. v. Scott Electric Co.*, Civil Action No. 06-00459, 2008 WL 1932307, at *2-3 (W.D. Pa. Apr. 30, 2008). The parties and BoA shall meet and confer promptly regarding the scheduling of Zimmerman's second deposition.[4]

                                                              /s/ Christopher J. Burke
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[4] Stella Defendants' request that Zimmerman reimburse them for reasonable expenses relating to the filing of their Motion, (D.I. 171 at 3), is DENIED.